THE CITY OF LINCOLN V. BYRON C. YEOMANS.

[FILED MARCH 23, 1892.]

1. Cities of the First Class: POLICE FORCE: APPOINTMENT.
   The excise board of the city of Lincoln, under the charter thereof,
   has exclusive power to appoint members of the regular police
   force of the city.

2. ——: ——: REMOVAL. Said board has power to remove and
   discharge members of the regular police force for cause, includ-
   ing a want of funds to pay salaries thereof.

3. ——: CHARTER CONSTRUED. The last clause of section 91 of
the charter of said city, which authorizes the mayor to remove
the police thereof for the purpose of discipline, is not in conflict
with the provision of said charter which confers upon the excise
board a general authority to appoint and remove the police.

ERROR to the district court for Lancaster county. Tried
below before FIELD, J.

*Wooley & Gibson, F. M. Hall,* and *Harwood, Ames &
Kelly,* for plaintiff in error, cited: *Duncan v. Hennen,* 13
Pet. [U. S.], 230; *People v. Ins. Co.,* 73 N. Y., 437;
*People v. Dunston,* 3 N. Y. Sup., 522; *People v. Mayor,*
5 Barb. [N. Y.], 43; *Laimbee v. Mayor,* 4 Sandf. [N. Y.],
109; *People v. Angle,* 17 N. E. Rep. [N. Y.], 413.

*Adams & Scott, contra,* cited: *Davis v. Mayor,* 1 Duer
[N. Y.], 451; *Halstead v. Mayor,* 5 Barb. [N. Y.], 218;
Cooley, Const. Lim., 234, 260; *Carron v. Martin,* 69·
Am. Dec. [N. J.], 584; *St. Paul v. Laidler,* 72 Id.
[Minn.], 89; *Law v. People,* 87 Ill., 387; *Oliver v.
Keightley,* 24 Ind., 514; *McCoy v. Briant,* 53 Cal., 247;
*Leavenworth v. Norton,* 1 Kan., 432; *Sherman v. Carr,* 8
R. I., 433; *Huesing v. Rock Island,* 128 Ill., 465; *St.
Louis v. Tel. Co.,* 96 Mo., 623.

POST, J.

This case involves a construction of sections 14 and 91,
chapter 13, Compiled Statutes 1891, for the government of
cities of the first class having over 25,000 and less than
100,000 inhabitants, and which will, for convenience, be
referred to as the charter of the city of Lincoln. Said
charter, as amended, provides for an excise board consist-
ing of the mayor, who is *ex officio* president, and two
members elected by the city at large. The provision of
section 14, previous to the amendment thereof in 1891,
pertaining to the appointment and removal of policemen

was as follows: "The city marshal and such number of police as the council may authorize shall be appointed and may be removed by the mayor at pleasure, and in case of an emergency the mayor may appoint a necessary number of special police, who shall be removable at his pleasure." In 1891 section 14 was amended by omitting the provision quoted above and inserted the following: "The city marshal and such number of police as the excise and police board may authorize shall be appointed, and may be removed by the excise board as hereinafter provided, and in case of emergency the mayor may appoint a necessary number of special police, who shall be removable at the pleasure of the mayor." Section 91 of the said charter was at the same time amended by the addition thereto of the following provision: "The excise board shall have power, and it shall be the duty of said board, to appoint a chief of police and such other officers and policemen, to the extent that funds may be provided by the mayor and council to pay their salaries, as may be necessary for the protection and efficiency of the police of the city, and as may be necessary to protect citizens and property, and maintain peace and good order; *Provided,* That the number of policemen shall be determined by the excise and police board shall not exceed more than one to every twenty-five hundred (2500) of population. The chief of police and all other police officers and policemen shall be subject to removal by the mayor whenever the said mayor shall consider and declare such removal necessary for the proper management and discipline or the more effective working or service of the police department."

On the 5th day of July, 1891, the funds for payment of salaries of police of the city, for the municipal year ending August 31, was practically exhausted, there remaining but ten per cent of the levy for that year available for said purpose. The salaries of policemen then in service amounted in the aggregate to $2,000 per month, or $4,000

for the months of July and August. The amount available for the purpose of meeting this expenditure at the end of the municipal year did not exceed $1,640, leaving a probable deficiency of over $2,000. On the day last named the mayor addressed to the excise board the following communication :

"LINCOLN, NEB., June 5, 1891.

" *Hons. John Doolittle and James Kelly, Ex. Com'rs—* DEAR SIRS : Your attention is respectfully called to the fact that the new charter permits only a three mill levy for support of the police department. This, on a total assessment of about $5,000,000, will afford us only $15,000, and will pay as follows: One chief, $100; one night captain, $90; one day sergeant, $75; driver patrol, $45 ; jailer, $60; and about sixteen patrolmen, $1,142; at $70, $1,490. This makes no provisions for any specials or other officers.

"Very truly, A. H. WEIR, *Mayor.*

On the 8th day of July, at a special meeting of said board, Messrs. Kelly and Doolittle, members, being present, the following record was made: " Mr. Kelly moved that the following patrolmen be relieved of duty on account of lack of funds to pay salary, and the chief of police be requested to return their commission, to take effect July 15, 1891, viz.: E. T. Lister, F. A. Mason, Samuel Pickel, G. E. McMullen, A. P. Allen, B. S. Yeomans. Motion prevailed—Ayes, Doolittle and Kelly." Notice of this order was given to the chief of police and city council in due form.

The defendant in error, although one of the members removed by the action of the excise board, continued to serve on the police force without other authority until the first day of August, at which time his account for salary for the full month of July, $70, was audited and allowed by the council. From the order allowing said bill F. B. Kimball, a taxpayer, appealed to the district court, where a trial was had, and judgment entered against the city for

the full amount in controversy.   To secure a reversal of
the judgment aforesaid  a petition in error  was filed in
this court.   Counsel in their briefs have ignored questions
in the record which are technical rather than substantial,
and submitted the case for a consideration upon its merits.

The important question presented is to what extent and
for what causes are the mayor and the excise board, by
provisions of the charter in question, authorized to re-
move the police of the city.   We have seen that under the
charter previous to 1891 the mayor alone could appoint
and might remove them at his pleasure, there being no lim-
itation on his discretion in that regard.   From an exami-
nation of the provisions of the section as amended it is
apparent that the charter contemplates two distinct kinds
or classes of police : first, members of the regular service
appointed by the excise board, and, second, special police to
be appointed by the mayor in his discretion, to serve for
the time being when an emergency exists therefor.  Since the
controversy is limited to the first class, or regular police, it
will not be necessary to examine the provisions with ref-
erence to the appointment and removal of special police.
The language of the charter is "shall be appointed and
may be removed by the excise board as hereafter provided,
and in cases of emergency the mayor may appoint a neces-
sary number of special police, who shall be removable by
him at his pleasure."   It seems clear to us that, unless
their authority is limited by provisions of some other sec-
tion, the excise board has exclusive authority to remove
members of the regular force.   We have been referred to
no provision which is claimed to be a limitation upon such
general authority, except the provisions of section 91 set
out above.   By that section the excise board is limited to
one member for every 2,500 of population, and also to a
chief of police and such other officers and policemen to the
extent funds may be provided by the mayor and city coun-
cil to pay their salaries.   In this section there is no express

authority found for the removal of police on account of a lack of funds, but in order to determine the true interpretation of this provision it should be construed in connection with section 14. From a consideration of the provisions of the two sections we conclude that the power of the excise board to appoint the regular police is exclusive, and that they are authorized to remove them for cause, including a want of funds to pay salaries thereof. The power to remove for this cause is a necessary implication from the provisions in question, and would be sufficient to authorize the board to thus reduce the expenses of the police department, in order to keep within the limits of the funds provided, in the absence of any such express authority as is found in section 14.

The authority conferred upon the mayor by the last sentence of section 91, to remove for cause therein enumerated, is in harmony with our construction of the charter. The legislature evidently contemplated emergencies when it would be necessary for the purpose of discipline in cases of insubordination, etc., when prompt and decisive action may be necessary in order to maintain the efficiency of the force, to promptly remove members thereof, and has conferred upon the mayor power to act in such case. To summarize briefly, the excise board has exclusive authority to appoint and may remove members of the regular police force, subject to the limitation contained in section 91, namely, not exceeding one for every 2,500 of the population and not exceeding the number for whose salaries provision has been made by the city, and the said board has authority to reduce the regular force by discharging members thereof, in order to keep the expenses of the department within the funds provided therefor. It follows, from this conclusion, that the defendant in error served without authority after the 15th day of July and the city council were not authorized to allow his salary for the full month.

The judgment of the district court is reversed, and the cause remanded for further proceedings therein.

REVERSED AND REMANDED.

·THE other judges concur.